*P Send*

SCANNED

```
                                    FILED
                           CLERK, U.S. DISTRICT COURT

                              SEP 2 0 2005

                           CENTRAL DISTRICT OF CALIFORNIA
                           BY                    DEPUTY
```

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCANTIBODIES LABORATORY, INC, ) <br><br> Plaintiff, ) <br><br> ) <br> v. ) <br><br> IMMUTOPICS, INC., IMMUTOPICS <br> INTERNATIONAL, LLC, ) <br><br> Defendants. ) | CV 04-8871 GPS (MANx) <br><br><br> **ORDER GRANTING PLAINTIFF'S <br> MOTION TO STAY PROCEEDINGS** |

Presently before the Court is Plaintiff Scantibodies Laboratory, Inc.'s Motion to Stay Action Pending Resolution of Plaintiff's Request To Patent and Trademark Office For Reexamination of Patent-In-Suit. Having considered the parties' submissions, the Court deemed this matter appropriate for decision without oral argument. *See* Local Rule 7-15. For the following reasons, the Court hereby **GRANTS** Plaintiff's Motion and stays this action pending the resolution of the reexamination proceeding.

## I. BACKGROUND

This is an action for patent infringement brought by Plaintiff Scantibodies Laboratory, Inc. ("Plaintiff") against Defendants Immutopics, Inc. and Immutopics International, LLC ("Defendants"). Plaintiff is the owner of U.S. Patent No. 6,689,556 (the '556 Patent). The '566 Patent claims a type of antibody which detects levels of whole or

```
DOCKETED ON CM

   SEP 2 2 2005        38

BY                     022
```

1  non-fragmented parathyroid hormone ("PTH") in biological samples, as well as methods

2  and kits for using such an antibody.

3         Accurate PTH measurement is important for a wide variety of diseases including

4  osteoporosis, hyperparathyroidism and renal failure. PTH regulates the amount of calcium

5  and phosphorous found in the blood. To assess whether the parathyroid gland is

6  producing the sufficient amount of PTH, the level of PTH in the blood must be measured.

7  The '566 Patent claims methods and kits which provide an accurate test for the presence

8  of PTH in the blood.

9         Defendants make and sell antibody and immunoassay test kits, which also gauge

10  the presence of PTH in the blood. Plaintiff alleges that Defendant's "Human BioActive

11  Intact PTH ELISA Kit" (the "First Kit") infringes the '566 Patent. Plaintiff further alleges that

12  after commencement of this action, Defendants ceased making and selling the First Kit but

13  are now selling another infringing product called the "Human BioActive PTH 1-84 ELISA

14  Kit" (the "Second Kit").

15         During the course of this litigation, Defendants identified prior art references which

16  they allege invalidate the claims of the '566 Patent. In a letter, dated August 5, 2005,

17  Defendants identified an abstract and discussion materials that were purportedly the

18  subject of a presentation made at the 79th Annual Meeting of The Endocrine Society in

19  June 1997 in Minneapolis, Minnesota. The abstract listed five authors, including John

20  Colford, Michael Salvati and Gordon MacFarlane, and was entitled "Isolation and

21  Characterization of Large Molecular Weight Fragments of PTH" (the Colford Abstract").

22  In its letter, Defendants asserted that the Colford Abstract invalidates the '566 Patent.

23         Plaintiff's counsel received the letter containing the Colford Abstract on August 9,

24  2005, and immediately forwarded it to his client. After reviewing the Colford Abstract,

25  Plaintiff determined that it would be appropriate to have '566 Patent reexamined in the

26  Untied States Patent and Trademark Office ("PTO") in light of this abstract.

27         On August 12, 2005, Plaintiff informed Defendants of its intent to file a request for

28  reexamination of the '566 Patent based on Colford Abstract. Plaintiff sought a stipulation

1   to stay the action, but Defendants refused to agree to a stay. Accordingly, Plaintiff filed this

2   motion to stay the proceedings pending the reexamination proceeding before the PTO.

3   **II.     LEGAL STANDARD**

4         "Congress enacted the [PTO] reexamination procedure to provide an inexpensive,

5   expedient means of determining patent validity which, if available and practical, should be

6   deferred to by the courts." *ASCII Corp. v. STD Entertainment USA,* 844 F. Supp. 1378,

7   1380 (D. Cal. 1994) *quoting Digital Magnetic Systems, Inc v Ansley,* 213 U.S.P.Q. (BNA)

8   290 (WD Okla 1982). The primary purpose of the reexamination procedure is to "eliminate

9   trial of that issue (when the (patent] is canceled) or to facilitate trial of that issue by-

10  providing the district court with the expert view of the [PTO] (when a claim survives the

11  reexamination proceeding)." *Gould v Control Laser Corp,* 705 F.2d 1340, 1342 (Fed Cir

12  1983).

13        In determining whether to grant a stay, courts consider, *inter alia,* "whether a stay

14  would unduly prejudice or present a clear tactical disadvantage to the non-moving party,

15  whether a stay will simplify the issues in question and trial of the case, whether discovery

16  is completed, and whether a trial date has been set." *Guthy-Renker Fitness L.L.C. v. Icon*

17  *Health & Fitness,* 1998 U.S. Dist. LEXIS 16553 (D. Cal. 1998) *citing GPAC, In. v. D. W. W.*

18  *Enterprises, Inc.,* 144 F.R.D. 60, 66 (D.N.J. 1992).

19        The court has "broad discretionary powers" to manage and control its docket. *Gould*

20  *v. Control Laser Corp.,* 705 F.2d 1340, 1341 (Fed. Cir. 1983). This includes the inherent

21  authority to stay a proceeding pending the outcome of the PTO reexamination. 3 Chisum

22  on Patents § 11:07[4][b][iv] *citing Tap Pharmaceutical Products, Inc. v. Aterix Laboratories,*

23  *Inc.,* 70 U.S.P.Q.2d 1319, 1320 (N.D. Ill. 2004). "There is a liberal policy in favor of

24  granting motions to stay proceedings pending the outcome of reexamination proceedings."

25  *ASCII Corp.,* 844 F. Supp. at 1381.

26  **III.    DISCUSSION**

27        In the instant case, a stay pending the outcome of the PTO's reexamination is

28  warranted. Defendants deny infringement of the '566 Patent and have brought cross-

1   claims for invalidity, unenforceability, and non-infringement. *See* Defs' Opp'n 2: 4-10.

2   It is Defendants' position that prior art, specifically the Colford Abstract, will result in an

3   invalidation of the patent-in-suit. *See Id.* 17: 9-16. Assuming the PTO grants Plaintiff's

4   request to reexamine the '566 Patent, it will determine whether the Colford Abstract was

5   material to the prosecution of the patent. If the prior art is material, then there is a

6   significant chance that the PTO may invalidate the patent or decrease its scope. *See*

7   *Tap Pharm. Prods,.* 70 U.S.P.Q.2d at 1320.

8         On the other hand, if the claims of the '566 Patent are either confirmed or

9   amended, the Court will then have the benefit of the PTO's expert opinion in construing

10  the claims in light of the prior art. Thus, there is significant overlap between this action

11  and the pending PTO reexamination. Accordingly, considerations of judicial economy

12  weigh strongly in favor of granting a stay.

13        Defendants, however, take the position that the potential effect of the

14  reexamination has been overstated by Plaintiff. Defs' Opp'n 17: 7-20. While

15  Defendants concede that if the PTO invalidates the '566 Patent, there would be no

16  need for trial, Defendants point out that reexamination will not address all issues in this

17  case. *Id.* 19-20: 18- 3. For instance, Defendants contend that a stay is improper given

18  the PTO will not address their claim of inequitable conduct or their request for attorneys'

19  fees. *Id.* In other words, Defendants assert that the likelihood of remaining issues for

20  trial weights against staying this proceeding. *Id.* 21: 10-14.

21        . However, while other issues may remain subsequent to reexamination, this does

22  not provide a sufficient basis to deny the requested stay. The Court is well aware that

23  the PTO's reexamination will not encompass all issues presented in this litigation. *See*

24  *In re Columbia Univ. Patent Litig.*, 330 F. Supp. 2d 12, 15-16 (D. Mass. 2004); Manual

25  of Patent Examining Procedure § 1901.06 ("The examiner will not, under any

26  circumstances, treat or discuss those arguments or points directed to . . . 'inequitable

27  conduct.'"). Nonetheless, the PTO will consider whether the prior art references were

28  material to the '556 Patent and, therefore, whether these references should have been

4

1    disclosed in the prosecution the patent.  Accordingly, a stay is appropriate given the

2    reexamination proceeding may materially impact many of the issues in this case,

3    including inequitable conduct and claim construction.

4         Moreover, the Court notes that Defendants have failed to sufficiently identify any

5    undue prejudice they will suffer if the stay is imposed.  Defendants' primary position

6    with respect to prejudice is that any delay in this action would adversely impact

7    Defendants' ability to market and sell its antibodies.  Defs' Opp'n 10-11: 22-8.

8    Defendants allude to potential contracts with "major drug" companies that may be lost if

9    this case is not resolved expeditiously.  *Id.* 12-13: 20-5.  To support this claim,

10   Defendants submit the declaration of their president, Richard Zahradnik.  Mr. Zahradnik

11   declares, *inter alia*, that Immutopics has had discussions with "three or four

12   companies....and those companies have expressed an interest in purchasing

13   [Defendants'] antibodies...."  Declaration of Richard Zahradnik ¶ 11.  However,

14   Defendants' speculation as to potential deals with unnamed buyers is insufficient to

15   support the assertion that business opportunities will be frustrated if the case is stayed.

16   Therefore, Defendants have failed to present sufficient evidence to demonstrate undue

17   prejudice

18        Further, it is noted that Plaintiff did not delay in seeking this motion.  Plaintiff's

19   counsel received the letter containing the Colford Abstract on August 9, 2005, and

20   immediately forwarded it to his client. After reviewing the abstract, it was decided that

21   Plaintiff would seek reexamination of the '566 Patent based on the Colford Abstract. On

22   August 12, 2005,  Plaintiff informed Defendants of its intent to file a request for

23   reexamination of the '566 Patent.  Thus, delay is not an issue in this matter.

24        In sum, a stay of this case is appropriate given the PTO's expertise may assist

25   both the Court and the parties in facilitating a resolution to this matter.  *See ASCII*

26   *Corp,* 844 F. Supp. at 1381.  Accordingly, Plaintiff's Motion is **GRANTED** and this case

27   is hereby stayed pending the reexamination proceeding.

28   *II*

## IV.    CONCLUSION

For the foregoing reasons, the Court hereby **GRANTS** Plaintiff's Motion and stays this action pending the outcome of the PTO's reexamination of the '566 Patent. The Court sets a status conference re status of reexamination for December 5, 2005, at 11:00 a.m.  Plaintiff is to file a status report on the status of reexamination proceeding by November 28, 2005.  In the event the PTO denies Plaintiff's request for reexamination, Plaintiff shall provide notice to the Court, as well as opposing counsel, within 24 hours of receiving the denial notification.

**IT IS SO ORDERED.**

Dated this _20th_ day of September, 2005.

HON. GEORGE P. SCHIAVELLI
UNITED STATES DISTRICT JUDGE